**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4258
_____

UNITED STATES OF AMERICA

v.

MARK T. MANUEL, JR.,
                         Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court  No. 2-09-cr-00394-001
District Judge: The Honorable Legrome D. Davis

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 11, 2013

Before: McKEE, *Chief Judge*, SMITH, and SLOVITER,
*Circuit Judges*

(Filed: October 17, 2013)

1

Mary E. Crawley, Esq.
Office of United States Attorney
Suite 1250
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
     *Counsel for Appellee*

Regina M. Coyne, Esq.
Suite 1313
1500 John F. Kennedy Boulevard
Two Penn Center Plaza
Philadelphia, PA 19102
     *Counsel for Appellant*

_____

OPINION

_____


SMITH, *Circuit Judge.*

In 2004, Mark Manuel, Jr. ("Manuel") pled guilty to mail fraud, in violation of 18 U.S.C. § 1341, and conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371. He was sentenced to prison followed by a three-year term of supervised release. After being released from prison, Manuel repeatedly violated the conditions of his supervised release. At a parole revocation hearing on July 26, 2012, Manuel informed

the District Court that he no longer wanted to be represented by counsel and instead wished to proceed *pro se*. The District Court engaged in a colloquy with Manuel, during which the Court inquired into Manuel's educational background, warned Manuel of the dangers in representing himself, and asked several questions about the reason for Manuel's desire to proceed *pro se*. The District Court ultimately granted Manuel's request to represent himself. At an adjourned revocation hearing on November 5, 2012, at which Manuel presented witness testimony, the District Court revoked Manuel's supervised release and sentenced him to two consecutive sixteen-month terms of imprisonment.

On appeal Manuel asks us to vacate the sentence imposed by the District Court and remand the matter for a new revocation hearing. Relying heavily on our decision in *United States v. Peppers*, 302 F.3d 120 (3d Cir. 2002), Manuel argues that the colloquy performed by the District Court regarding his request to proceed *pro se* was insufficient. We disagree. *Peppers* dealt with a defendant's right to self-representation in a criminal prosecution—not a parole revocation hearing. Following the test adopted by other courts of appeals, we hold that, in the context of a hearing regarding the revocation of supervised release, the appropriate test is whether the totality of the circumstances demonstrates that the defendant knowingly and voluntarily waived representation by counsel. Based on the record before us,

we find that the totality of the circumstances shows that Manuel made a knowing and voluntary decision to represent himself. Consequently, we will affirm the District Court.

## I.

A.    *Manuel's Fraud Offenses and Conviction*

Between July 2000 and November 2001, Manuel and a co-conspirator fraudulently solicited membership interests in a variety of programs owned and operated by Manuel.[1]  Manuel represented to potential investors—most of whom were low- or moderate-income individuals seeking help purchasing or refinancing their homes—that, in exchange for payment of a membership fee (ranging from a few hundred to a few thousand dollars), Manuel's programs would provide assistance with debt consolidation, mortgage refinancing, and obtaining loans from banks.  Manuel and his co-conspirator did not provide these benefits to the investors.  Instead, unbeknownst to the investors, Manuel and his co-conspirator used the funds received from the investors for

---

[1] These programs included the Future Millionaire's Club, Manuelabor.com, Get-A-Crib.com, S.E.E.E.D. (Spiritual Empowerment Equals Economic Development) Consortium, MWM Enterprises d/b/a 4M Limited, and Debt Pool.

4

their own personal benefit.

On November 12, 2003, a grand jury in the U.S. District Court for the Eastern District of Virginia indicted Manuel on four counts of mail fraud, in violation of 18 U.S.C. § 1341, and one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371, in connection with this scam. On May 11, 2004, Manuel pled guilty to one count of mail fraud and the count of conspiracy to commit mail fraud. On October 26, 2004, the Eastern District of Virginia sentenced Manuel to seventy-one months in prison, followed by a three-year term of supervised release. As one condition of his supervised release, Manuel was required to refrain from any unlawful drug use and ordered to undergo periodic drug testing as directed by his probation officer. He also was prohibited from self-employment and from working in occupations where he would have access to personal or financial information during the period of supervised release.

B. *Manuel's Repeated Violations of the Terms of Supervised Release*

In December 2008, Manuel was released from prison and commenced his term of supervised release. On June 15, 2009, the Eastern District of Pennsylvania accepted a transfer of jurisdiction over Manuel's supervised release from the Eastern District of Virginia pursuant to 18 U.S.C. § 3605. Between 2009 and 2011,

Manuel repeatedly violated the conditions of his supervised release by, among other things, failing numerous drug tests. After a revocation hearing on March 10, 2011, the District Court revoked Manuel's supervised release and imposed a sentence of two concurrent terms of eight months in prison, followed by two concurrent terms of twenty-four months of supervised release.

On October 24, 2011, Manuel was released from prison and commenced his second term of supervised release. On November 2, 2011 and February 6, 2012, Manuel again submitted urine specimens that tested positive for cocaine. Additionally, during a routine home visit on February 7, 2012, Manuel's probation officer discovered flyers advertising a debt-reduction seminar that Manuel had organized, which constituted a violation of the conditions of Manuel's supervised release barring him from engaging in self-employment and participating in employment where he would have access to personal or financial information.

To address these ongoing drug violations, the District Court modified the conditions of Manuel's supervised release and ordered him to reside in a residential reentry center for a period of 120 days. While confined to the residential reentry center, Manuel continued to commit additional loan fraud offenses. A victim, Kathryn Williams ("Williams"), reported to Manuel's parole officer, Kyle Watts ("Watts"), that in

April 2012, Manuel had recruited her to participate in an organization called the "Women's Opportunity Organization," which he claimed was created to provide financial assistance to single women, and had convinced Williams to give him $500 for membership in another organization, the "NEMA Financial Empowerment Association," in exchange for the promise to secure a $300,000 home loan for her. *See* Report of Violation of Supervised Release dated June 11, 2012, Supplemental Appendix 28–29. Additionally, Watts learned that, on or around May 24, 2012, Manuel solicited other residents of the reentry center to pay money to one of his organizations and promised these residents that in return they would receive profits and assistance with debt reduction, restructuring mortgages, and obtaining and refinancing home loans. *Id.* at Supplemental Appendix 30.

C. *Manuel's Revocation Hearing and Request to Proceed* Pro Se

On June 11, 2012, the District Court issued a warrant for Manuel's arrest and signed a petition seeking revocation of supervised release. At a preliminary hearing on June 15, 2012, Manuel stipulated to probable cause and detention pending his final revocation hearing.

The District Court held an initial revocation hearing on July 26, 2012. At this hearing, the government presented evidence of Manuel's violations of

the conditions of supervised release, including testimony by Manuel's probation officer and testimony by Williams and her mother about Manuel's efforts to solicit Williams' participation in the Women's Opportunity Organization and NEMA Financial Empowerment Association.

After these witnesses were cross-examined by Manuel's counsel, Regina Coyne, Esq. ("Ms. Coyne"), and the government had concluded presenting its evidence, Manuel informed the District Court that he no longer wanted to be represented by Ms. Coyne and instead wished to proceed *pro se*. The District Court engaged Manuel in the following colloquy about his request, during which the Court questioned Manuel about, among other things, his educational background and lack of familiarity with court rules, his reasons for wanting to represent himself, and the strategic disadvantages of proceeding *pro se*:

> THE COURT:     So, sir, how old are you?
>
> THE DEFENDANT:     I am fifty-four years old.
>
> THE COURT:     And how far did you go in school?
>
> THE DEFENDANT:     Four years of college.

THE COURT: And where did you go to college?

THE DEFENDANT: Indiana University, Wilmington [*sic*], Indiana.

THE COURT: You need to speak louder. So you completed your academic program but if I remember correctly, since you had an outstanding tuition bill, you didn't get your degree, is that correct?

THE DEFENDANT: Degree, yes. Thank you.

THE COURT: Do you have any drugs or alcohol in your system today?

THE DEFENDANT: No, I do not.

THE COURT: And do you have any mental health problems today or have you had any in the past?

THE DEFENDANT: No, I do not.

THE COURT: And tell me what you got your degree in?

THE DEFENDANT: Business administration and management.

9

THE COURT: All right. So you did not go to any post-grad -- or post-graduate program of any sort, is that correct?

THE DEFENDANT: No, sir.

THE COURT: And -- am I correct, is that --

THE DEFENDANT: Yes.

THE COURT: And it would be fair to say that you do not have any legal training, is that also correct?

THE DEFENDANT: That is correct.

THE COURT: It would be fair to say that you haven't gone to law school?

THE DEFENDANT: That is correct.

THE COURT: So you obviously understand this is a court of law with very clear and established rules and procedures --

THE DEFENDANT: Yes, sir.

THE COURT: -- correct?

THE DEFENDANT: Yes.

THE COURT: And you're one who

10

does not have legal training. You would be bound by the rules and the procedures, do you understand that?

THE DEFENDANT: Yes.

THE COURT: There may be certain things that you want to say that could be useful. But because you're not legally trained, you wouldn't think of them, right? So you may miss things because you're not legally trained. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: There may be objections to some of the government's questions. And because you're not legally trained, you might not be able to know to object. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: All right. But if you -- you, of course, have the absolute right to represent yourself if that's your wise and informed choice. You understand that?

THE DEFENDANT: Yes, I do.

THE COURT: But if you represent

11

yourself, you would be the lawyer.  She would serve only in a back-up capacity.  There wouldn't be any switching back and forth.  Your representation would have to be total and complete.  Do you understand that?

THE DEFENDANT:     Yes.

THE COURT:     You understand everything I have said to you about this?

THE DEFENDANT:     Yes, I do.

THE COURT:     Do you have any questions about any of it?

THE DEFENDANT:     No.  Just apologize beforehand if I make any errors.

THE COURT:     Well, if you make errors, they're yours.

THE DEFENDANT:     Okay.

THE COURT:     Right?  Because I would advise you --

THE DEFENDANT:     Well, but --

THE COURT:     Excuse me.  I would advise you to keep your lawyer. That's what I would advise you.  I have not seen ever a

12

defendant who's benefitted himself by self-representing. Ever. May you be the first, but I doubt it. I would advise you to keep your lawyer. So why do you want to get rid of her?

THE DEFENDANT: Sir, because, first of all, I believe that there have been certain due process and procedural errors in this entire venue with respect to my sentencing, with respect to the documentation that I received from the probation officer, with respect to my disposition, the amount of imprisonment time, the amount of supervised release time that I had, the allegations concerning -- I was placed in a halfway house because of suspicion of doing business when it was for -- I agreed to modification because of drug use. There has been no --

THE COURT: Sir, I have an entire file --

THE DEFENDANT: Sure.

THE COURT: -- for you even though this is a case transferred from Virginia. I probably have eight or ten reports from the probation department.

13

THE DEFENDANT:    Okay.

THE COURT:    And so, I am very familiar with – and I can measure independently what Mr. Watts tells me. But you're explaining to me why you do not want to be represented by Ms. Coyne. So tell me why you don't want to be represented by her.

THE DEFENDANT:    Because, number one, I believe that I should be able to confront all my witnesses. And her speaking on behalf of her daughter, even though that's her daughter, I don't believe that that's in my best interest. Number two --

THE COURT:    We're not in a trial proceeding. This is a revocation hearing. And hearsay is admissible and you would know it if you were a lawyer.

THE DEFENDANT:    Well --

THE COURT:    Hearsay is admissible. And then, secondly, there's a question of weight, right --

THE DEFENDANT:    Correct.

14

THE COURT: -- that I would assume to the evidence. And this is the disadvantage you have because you're not a lawyer.

THE DEFENDANT: Right. Yes. I understand hearsay is admissible but also I have the right to confront an adverse witnesses [*sic*] against me, sir. And just like she --

THE COURT: Your right to confrontation applies to revocation proceedings in the same way that it applies to a trial, yes or no? Don't know, do you.

THE DEFENDANT: Yeah, based on *Morrissey v. Brewer*, it says yes – yes, it is. And I have the case right here.

THE COURT: Give me the facts in *Morrissey*. That's from the '60s, right?

THE DEFENDANT: No. It's from '72.

THE COURT: '70s. I meant it was old. And if you're going to read from the document that you submitted, I guess it was last week, I've already read that.

THE DEFENDANT: No. No. I was going to --

15

THE COURT:     You're going to read from something else?

THE DEFENDANT:     I'm sorry?

THE COURT:     You're going to read from something else?

THE DEFENDANT:     Yes.  I'm going to read from the exact case itself, *Morrissey v. Brewer*.

THE COURT:     Are you going to read from *Morrissey*?

THE DEFENDANT:     Yes.

THE COURT:     Okay.  I don't need you to read *Morrissey* to me.

THE DEFENDANT:     Well, I was just going to read the part about what due process and what respect to supervised release revocation hearings, just that one part --

THE COURT:     Okay.

THE DEFENDANT:     -- about being able to confront adverse witnesses.

THE COURT:     Fine.  Go ahead.  Read

16

what you want to read.

THE DEFENDANT: If you'll bear with me.

(Pause)

THE DEFENDANT: Okay. It says basically with respect to preliminary --

MS. COYNE: You've got the wrong one.

THE DEFENDANT: Okay. "On request of the parolee, a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence."

THE COURT: So why else do you want to terminate her as your lawyer?

THE DEFENDANT: Well, sir --

THE COURT: Well, you know what? I could just tell you right now. Ms. Williams, the daughter, I am disregarding all of her information. All right?

THE DEFENDANT: Okay.

THE COURT: I am not accepting it for

17

the truth of the matter. I'm only accepting it as the route that this case --

THE DEFENDANT: Oka. [*sic*]

THE COURT: -- traveled to get in front of me.

THE DEFENDANT: Okay.

THE COURT: So go ahead. What else do you want to say?

THE DEFENDANT: Well, understanding exactly what you said, the witness that is here, she basically stated in the documentation that I received from probation that she met me outside of a convenience store soliciting.

THE COURT: Sir, I can't talk you out of self-representing. Is that where we're going? You want to represent yourself?

THE DEFENDANT: Well, I want certain questions to be --

THE COURT: Yes or no? Do you want to represent --

THE DEFENDANT: Yes.

18

THE COURT: Okay. Do you want her to serve in a backup capacity?

THE DEFENDANT: Yes, I do.

THE COURT: All right. Any other questions either of the lawyers think I need to ask?

MS. CRAWLEY: No, Your Honor.

MS. COYNE: No, Your Honor.

THE COURT: You've done a lot of foolish type things in your life, sir. This might be the most foolish you've ever done. That's my advice to you. But if you want to do it, I don't have legal authority to stop you. All right.

Transcript of Hearing Regarding Violation of Supervised Release, Appendix 55–62. The District Court granted Manuel's motion to proceed *pro se* and allowed him to retain Ms. Coyne as standby counsel.

Manuel represented himself for the remainder of the July 26 hearing and, at the close of the hearing, requested a continuance in order to serve subpoenas and present additional witnesses. The Court granted the request. At an adjourned revocation hearing on August 27, 2012, Manuel requested, and was granted, another

continuance of sixty days. On November 5, 2012, the District Court held a third revocation hearing, at which Manuel presented witness testimony from his substance abuse therapist and employees of the residential reentry center. At the conclusion of the November 5th revocation hearing, the District Court found Manuel in violation of his supervised release and imposed the statutory maximum sentence of sixteen months on each of the two terms of release, to be served consecutively, for a total sentence of thirty-two months. This timely appeal followed.[2]

## II.

Manuel asks us to vacate the sentence imposed by the District Court and remand the matter for a new revocation hearing. Manuel argues that the colloquy performed by the District Court regarding Manuel's request to represent himself at the revocation hearing was inadequate, thus rendering his waiver of his right to counsel ineffective. We disagree.

---

[2] The District Court had jurisdiction over the criminal offenses for which Manuel was convicted pursuant to 18 U.S.C. § 3231 and had jurisdiction over the revocation of Manuel's supervised release pursuant to 18 U.S.C. § 3583(e). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

A.	*The Standard of Review*

We exercise plenary review over a district court's finding that a defendant in a criminal prosecution knowingly and intelligently waived the right to counsel. *United States v. Booker*, 684 F.3d 421, 425 (3d Cir. 2012). The government argues, citing *United States v. Jackson*, 443 F.3d 293, 300–01 (3d Cir. 2006), and other, non-precedential authority, that because Manuel failed to interpose an objection to the colloquy conducted by the District Court, we should apply a plain error standard of review. Manuel, by contrast, urges us to apply plenary review. We find that even under the more stringent plenary review, the District Court committed no error with regard to Manuel's waiver of counsel.

B.	*The Standard for Determining the Efficacy of a Defendant's Waiver of Counsel at a Revocation Hearing*

The right to counsel in a criminal prosecution embodied in the Sixth Amendment carries with it the corollary right to proceed *pro se*. *Faretta v. California*, 422 U.S. 806, 819–21 (1975). Before being permitted to waive the right to counsel in favor of self-representation, a defendant in a criminal prosecution must be made aware of the dangers and disadvantages of proceeding *pro se* and must knowingly, intelligently, and voluntarily forego the benefits of representation by counsel. *Id.* at 835 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464–65

(1938)). Recognizing the fundamental importance of this constitutional right, we have made clear that in a criminal prosecution, the trial court bears "the weighty responsibility of conducting a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as voluntary." *United States v. Peppers*, 302 F.3d 120, 130–31 (3d Cir. 2002). To assist in conducting this inquiry, we set forth a framework in *Peppers* containing fourteen questions for the court to ask the criminal defendant in order to assure the court that the defendant's decision to proceed *pro se* is knowing, intelligent, and voluntary. *Id.* at 136–37. *See also United States v. Jones*, 452 F.3d 223, 228–29 (3d Cir. 2006) ("The purpose of the inquiry is to establish that the defendant: (1) has 'clearly and unequivocally' asserted his desire to represent himself; (2) 'understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other facts important to a general understanding of the risks involved'; and (3) is competent to stand trial.") (quoting *Peppers*).

However, *Peppers* applies only to a defendant's request to proceed *pro se* in a criminal prosecution. A parole revocation hearing is not a criminal prosecution. *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972) ("[T]he revocation of parole is not a part of a criminal prosecution and thus the full panoply of rights due a

22

defendant in such a proceeding does not apply to parole revocations."). Accordingly, there is no constitutional right to representation by counsel at a parole revocation hearing. *Gagnon v. Scarpelli,* 411 U.S. 778, 783–90 (1973). Thus, the fourteen-point inquiry set forth in *Peppers* is not the appropriate standard for determining the sufficiency of a colloquy performed by an examining court in response to a defendant's request to proceed *pro se* at a revocation hearing.

Although a defendant at a revocation hearing does not have a constitutional right to counsel, a revocation hearing nonetheless presents the risk of a loss of liberty and thereby triggers the requirements of due process in general. *Morrissey,* 408 U.S. at 484; *Scarpelli*, 411 U.S. at 781–82. Federal Rule of Criminal Procedure 32.1 was promulgated to address these due process concerns. *See* Fed. R. Crim. P. 32.1; *see also United States v. Barnhart*, 980 F.2d 219, 222 (3d Cir. 1992) (noting that these due process requirements were incorporated into Rule 32.1 following *Morrissey* and *Scarpelli*). However, Rule 32.1 does not address the appropriate standard by which to assess a defendant's waiver of the Rule's protections.

We have not had occasion to speak to this issue in a precedential opinion—however, several of our sister circuits have addressed it and we consider their reasoning persuasive. We expressly adopt the standard set forth in those decisions: that, in order for due process to be satisfied in the context of a parole revocation hearing, the

23

defendant's waiver of rights under Rule 32.1 must be knowing and voluntary under a "totality of the circumstances." *See United States v. Hodges*, 460 F.3d 646, 651–52 (5th Cir. 2006); *United States v. Correa-Torres*, 326 F.3d 18, 23 (1st Cir. 2003); *United States v. LeBlanc*, 175 F.3d 511, 515–17 (7th Cir. 1999). This standard does not require "rigid or specific colloquies with the district court." *Hodges*, 460 F.3d at 651. Rather, "the district court, when confronted with an attempted waiver, will advise . . . the person on supervised release of both the rights afforded him . . . and the consequences of relinquishing those rights." *Id.* at 651–52 (citing *Correa-Torres*, 326 F.3d at 23). No "particular mantra" is necessary and no "magic words" are required for the district court to be satisfied that the defendant's waiver is knowing and voluntary. *Id.* at 652. On appellate review where the defendant on supervised release challenges the validity of the waiver of counsel, the reviewing court should examine "the totality of the attendant circumstances [including] evidence that sheds light upon the target's comprehension of the charges against him and evidence as to his appreciation of the nature of the rights afforded him by Rule 32.1." *Id.*

C.    *The Totality of the Circumstances Demonstrates that Manuel's Waiver of Counsel Was Knowing and Voluntary*

We are satisfied that, under the totality of the circumstances, Manuel's waiver of counsel at his

24

revocation hearing was knowing and voluntary. Manuel was aware of the nature of the charges against him and the severity of the penalties that he faced. Although he had no legal training, Manuel demonstrated familiarity with the criminal process and the procedures surrounding revocation of his supervised release. Manuel explicitly acknowledged that he was aware that the revocation hearing operated on technical rules and procedures and that, as a non-lawyer, he may not raise appropriate objections or make relevant arguments. The District Court also specifically warned him of the strategic disadvantages of proceeding *pro se*, advised him that he would bear responsibility for any technical or strategic errors that he might make while representing himself, and strongly recommended that he keep Ms. Coyne as his counsel rather than proceed *pro se*. Finally, there is nothing to suggest that Manuel's waiver was the product of coercion or gamesmanship and nothing to suggest that this decision was anything other than Manuel's voluntary and informed choice.

## III.

For the reasons stated above, we hold, as have our sister circuits, that a defendant's waiver of the rights afforded by Rule 32.1 is effective where it is knowingly and voluntarily made. In a parole revocation hearing, a defendant's waiver of his right to counsel is effective where the totality of the circumstances demonstrates that the defendant's waiver of counsel was made knowingly

and voluntarily.  Based on the record evidence before us, we conclude that the totality of the circumstances demonstrates that Manuel's waiver of his counsel was knowing and voluntary.  Accordingly, we will affirm.