**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-1095 & 20-1138
_____

UNITED STATES OF AMERICA

v.

DANIEL KUSI,
Appellant in 20-1095

GERMAINE KING, also known as Germaine Howard,
Appellant in 20-1138
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-18-cr-00379-002 and 001)
District Judge: The Honorable John M. Vazquez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 9, 2021

Before: HARDIMAN, MATEY, and SCIRICA, *Circuit Judges.*

(Filed: November 24, 2021)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

A jury found Germaine King and Daniel Kusi guilty of bank and mail fraud. King challenges the sentence that followed, while Kusi appeals some of his convictions. Seeing no merit in their arguments, we will affirm the District Court.

## I. BACKGROUND

We recount only the basic facts in this complicated tale of fraud that begins with King and his wife, Melissa Reynolds, devising a plan to use money orders to eliminate their debts. Kusi supplemented his work at a New Jersey state agency with a rental car business. The luxury kind. Kusi leased several exquisite vehicles including a Rolls Royce, a Bentley, and two Mercedes-Benzes. The monthly payments on this fleet were unsurprisingly expensive, and when Kusi could not pay the bills, he turned to King for help. King and Reynolds obliged, explaining they could pay off his loans with their "private bank." (App. at 1504.) Using fake checks from King and Reynolds, Kusi sent payoff information to his creditors. Most figured out the scam quickly, but Bentley did not catch on as fast and, thinking payment in hand, they mailed Kusi title to the car. Kusi quickly sold the Bentley for $82,000, giving King $25,000. But the scheme mostly failed so Kusi filed a bankruptcy petition.[1] He left out a few things including, for example, his ownership of several guns, his sale of the Bentley, and his $25,000 payment to King. He also falsely claimed he was not married and failed to report his wife's employment. Federal charges followed for bank, mail, and bankruptcy fraud.

---

[1] The bankruptcy court eventually dismissed the petition.

After a jury found King and Kusi guilty on all counts, King was sentenced to 70 months imprisonment and Kusi 57 months, both within the advisory Guideline range. King now appeals his sentence as substantively unreasonable. Kusi challenges nine of the thirteen counts of conviction, asserting a lack of evidence and improper expert witness testimony.[2] Finding no error, we will affirm the District Court's Judgments.

## II. DISCUSSION

We review King's sentence for an abuse of discretion. *United States v. Seibert*, 971 F.3d 396, 399 (3d Cir. 2020). We exercise plenary review over Kusi's sufficiency-of-the-evidence claims and will uphold the jury's verdict if there is substantial evidence, viewed in the light most favorable to the United States, from which a reasonable factfinder could find guilt beyond a reasonable doubt. *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc). Finally, we review Kusi's claim of improper expert testimony for abuse of discretion. *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 831 (3d Cir. 2020).

### A.    King's Sentence

When a sentence is "within the applicable Guidelines range, we may presume that the sentence is reasonable." *United States v. Handerhan*, 739 F.3d 114, 119—20 (3d Cir. 2014) (citing *Rita v. United States*, 551 U.S. 338, 350–51 (2007)). We will not reverse a sentence as substantively unreasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

King fails to meet this high bar. The sentencing Judge reasonably weighed the facts and circumstances, King's crimes, and the factors listed in 18 U.S.C. § 3553(a) before imposing a sentence within the applicable Guidelines range. Such sentences are not uncommon, *see e.g.*, *U.S. v. Manuel*, 732 F.3d 283, 285 (3d Cir. 2013) (71-month sentence for mail fraud offenses), and there is nothing substantively unreasonable about the District Court's decision. Accordingly, we will affirm.

**B.     Kusi's Claims**

Kusi brings a host of challenges to his conviction, and we consider each in turn.

1.      Witness Testimony

Kusi claims the Government improperly offered FBI forensic accountant Omar Martinez as an expert witness. But Martinez never testified as an expert, a point emphasized when Kusi's counsel called Martinez an "expert," prompting the Judge to remind him that "[h]e hasn't been qualified as an expert."[3] (App. at 892.) And for that reason, Kusi's challenge cannot prevail.

2.      Conspiracy to Commit Mail Fraud

Next, Kusi challenges his conviction for conspiracy to commit mail fraud, arguing he did not know King and Reynolds were using fake checks to pay off his debts. As the District Court explained, a conspiracy may be proven by direct or circumstantial evidence, and a jury may infer the existence of a conspiracy based on the totality of the evidence.

---

[3] At another point, the Judge asked, "So what more do you want from a witness who doesn't even pretend to be an expert?" (App. at 1388.)

*United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005). Finding substantial evidence in the record, we will affirm Kusi's conviction.

King and Kusi both testified that at their initial meeting, Kusi explained his debt, and King agreed to provide Kusi with checks. King and Reynolds also informed Kusi that they would create the checks on a computer, and that Reynolds would use her "private estate" to manage the payoffs. And Kusi was familiar with money, using several business accounts to operate his car rental company. The jury had sufficient evidence to conclude Kusi understood the nature of these transactions and intended to join King in a conspiracy. So we will affirm.

### 3. Mail Fraud and Bankruptcy Fraud

Finally, Kusi challenges his convictions for six counts of mail fraud related to his payments to Mercedes-Benz, as well as two counts of bankruptcy fraud. The Government argues Kusi waived these challenges, and though his arguments are sparse, they are sufficient. But Kusi's arguments fail on the merits.

To prove mail fraud, the "evidence must establish beyond a reasonable doubt (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails . . . in furtherance of the scheme." *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001). As for elements one and two, much of the same evidence from which the jury could find Kusi guilty of conspiracy applies with equal force here. For example, when Bentley confronted Kusi with the bounced checks, Kusi claimed he would pay off the car within one week. But Kusi had sold the Bentley to a used car dealership for $82,000 and sent $25,000 of the proceeds to

5

King. Mercedes-Benz caught Kusi before he could repeat the sale, but it was reasonable for the jury to infer Kusi intended to defraud the company in the same manner.

Kusi argues he was not "even aware that the mail would be used." (Kusi Br. at 26.) That is of no moment, as the Government may prove a defendant "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can *reasonably be foreseen*, even though not actually intended." *Pereira v. United States*, 347 U.S. 1, 8–9 (1954) (emphasis added). In any event, the Government exceeded that bar by introducing evidence Kusi knew paying off debts meant King and Reynolds would send physical checks to multiple locations in and out of state.

Kusi's bankruptcy fraud appeal meets the same fate. To convict Kusi under section 1519, the Government must prove Kusi "knowingly…falsifie[d]" bankruptcy records "with the intent to impede, obstruct, or influence" a bankruptcy proceeding. 18 U.S.C. § 1519. And to convict Kusi under section 152(2), the Government must prove Kusi "knowingly and fraudulently ma[de] a false oath or account in or in relation to" a bankruptcy proceeding. 18 U.S.C. § 152(2). To overturn the convictions, we must find substantial evidence lacking.

But there is plenty of evidence. The Government introduced testimony from a task force officer, a bankruptcy expert, an IRS employee, and the bankruptcy trustee who interviewed Kusi under oath to show that Kusi's petition contained many false statements. Kusi claims that because the false statements are his lawyer's fault, he did not possess the required intent under section 1519. But he asserted that defense at trial, and the jury

exercised its discretion in giving it little weight. As substantial evidence supports these convictions, we will affirm.

### III. CONCLUSION

For these reasons, we will affirm the District Court.