NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 20-1713

---

CARL LOUIS ROBINSON, as Executor
of the Estate of Georgia A. Hope, Deceased,

Appellant

v.

FAIR ACRES GERIATRIC CENTER; COUNTY OF DELAWARE, acting through the Delaware County Council; WILLIAM D'AMICO, Administrator for Fair Acres Geriatric Center, in his individual and official capacities; DR JAMES BONNER, Medical Director for Fair Acres Geriatric Center, in his individual and official capacities; DR FRANKLIN VOGEL, JR., DPM treating physician at Fair Acres Geriatric Center, in his individual and official capacities; WALTER LEWIS, MD, at Fair Acres Geriatric Center, in his individual and official capacities; JOHN AND JANE DOES, Employees at Fair Acres Geriatric Center, in their individual and official capacities; TRACEY DALE WILLIAMS, Head Nurse in her individual and official capacities at Fair Acres Geriatric Center; TERI FARR, R.N., Director of Nursing at Fair Acres Geriatric Center, in his/her individual and official capacities

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-15-cv-06749)
District Judge: Honorable Eduardo C. Robreno

---

Submitted Under Third Circuit LAR 34.1(a)
November 16, 2020

Before: AMBRO, BIBAS and ROTH, Circuit Judges

(Opinion filed: February 22, 2021)

OPINION[*]

AMBRO, Circuit Judge

The estate of a deceased woman ("the Estate") sued a Pennsylvania nursing home and affiliated parties ("Defendants") that allegedly neglected her before her death. The District Court granted summary judgment in favor of two Defendants and the remaining Defendants prevailed at trial. The Estate appeals. For the following reasons, we affirm.

## I. Background

From January to November 2014, the late Georgia Ann Hope was a resident of the Fair Acres Geriatric Center, a nursing facility owned and operated by Delaware County, Pennsylvania. At the time, Hope was 90 years old and had a variety of serious health issues. In December 2015, Hope sued Fair Acres, alleging that the facility neglected her during her time there. While the suit was pending, she died. The trial judge dismissed the suit for failure to state a claim. The Estate appealed, and we vacated and remanded because Hope adequately pled a 42 U.S.C. § 1983 claim under a failure-to-train theory of liability. *Robinson v. Fair Acres Geriatric Ctr.* (*Robinson I*), 722 F. App'x 194, 196 (3d Cir. 2018).

On remand, the Estate added new defendants and the District Court granted summary judgment in favor of Defendants Walter Lewis and Franklin Vogel, Jr., doctors

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

who contracted with Fair Acres to treat patients, including Hope. The case then proceeded to trial as to the remaining Defendants—Fair Acres, Delaware County, Fair Acres administrator William D'Amico and Fair Acres Medical Director James Bonner—and the jury found in their favor. The Estate filed post-trial motions (including a motion for a new trial), which the District Court denied, concluding that "the evidence supports a jury finding that Ms. Hope received all care and services to which she had a federal right, and that the injuries she suffered were an unavoidable result of her vascular condition and advanced age unrelated to any infection control measures on the part of Defendants." App. 39.

## II. Analysis

The Estate raises four arguments on appeal. None provides a basis for reversal.

### A. Grant of summary judgment

The Estate argues that the District Court erred when it granted summary judgment in favor of Drs. Lewis and Vogel because they were not state actors under § 1983. We review the grant or denial of summary judgment *de novo* and "apply[] the same standard as the district court." *Tri–M Grp., LLC v. Sharp,* 638 F.3d 406, 415 (3d Cir. 2011). "Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007) (internal citation omitted). "To defeat a motion for summary judgment, the nonmoving party must raise more than some metaphysical doubt as to the material facts, . . . and the court must determine that a fair-minded jury could return a

verdict for the nonmoving party on the evidence presented." *Doe v. Luzerne County*, 660 F.3d 169, 175 (3d Cir. 2011) (internal quotation marks, alteration marks, and citations omitted).

Section 1983 applies only to "those who deprive persons of federal constitutional or statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting 42 U.S.C. § 1983). There is no evidence that Drs. Lewis and Vogel were acting under color of state law when they treated Hope, nor has the Estate identified any factual disputes on this issue that the District Court overlooked. Thus the doctors were entitled to summary judgment.

To determine whether an individual is a state actor, we ask whether "the alleged infringement of federal rights [is] fairly attributable to the State[.]" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (internal quotation marks and citation omitted). In answering this question, we consider

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks and citation omitted). The doctors do not fall into any of these categories. They did not exercise powers that are "traditionally the *exclusive* prerogative of the State." *Rendell-Baker*, 457 U.S. at 842 (citation omitted) (emphasis in text). Moreover, the record is clear that the doctors were independent contractors who made medical decisions without governmental involvement.

The central premise of the Estate's argument is that this case is akin to *West v. Atkins*, 487 U.S. 42 (1988), in which the Supreme Court held that a physician who contracted with a state to treat inmates at a prison hospital was a state actor. But *West* did not hold that all doctors who contract with government-operated facilities are state actors. Instead, the Court's conclusion rested on the fact that "the only medical care [the inmate plaintiff] could receive for his injury was that provided by the State." *Id.* at 55. This reasoning has no application here. Unlike the plaintiff in *West*, Hope was not incarcerated and had the option to obtain medical care from other providers not affiliated with Fair Acres. Accordingly, because there was no evidence that the doctors were state actors, the District Court's grant of summary judgment in their favor was appropriate.

**B. Jury instructions**

The Estate also argues that the District Court erred in refusing to issue two of the Estate's proposed jury instructions and in declining to correct these errors by granting the Estate's post-trial motions. "[I]n the absence of a misstatement [of the applicable law] we review [jury instructions] for abuse of discretion." *Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 180 F.3d 542, 549 (3d Cir. 1999). "As long as the instructions are accurate in substance and understandable to lay persons, the failure to use the exact words requested by counsel is not reversible error." *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 79 (3d Cir. 2018) (internal quotation marks and citation omitted). Even where a jury charge contains errors, if they are harmless and do not prejudice the complaining party, they "are not sufficient grounds on which to vacate a judgment and order a new trial." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006).

### 1. Proposed jury instruction on failure to train and supervise

The Estate argues that the District Court erred in denying its request to instruct the jury that the Estate was bringing a claim of "inadequate training and/or inadequate supervision," App. 608, 609, 611, and instead instructing the jury that the Estate's claim was based on Defendants' alleged "Failure-to-Train," App. 1477. The District Court's instruction did not misstate the applicable law, and its denial of the Estate's request was not an abuse of discretion.

The Estate's argument hinges on a passing statement we made in *Robinson I*: "Hope . . . [pled] adequate facts to support her contention that Fair Acres demonstrated deliberate indifference through its failure to properly train and supervise its staff." *Robinson I*, 722 F. App'x at 199. Because this statement included the word "supervise" and the District Court's jury instructions did not include that word, the Estate maintains, the District Court failed to follow our mandate.

We are unpersuaded. In context, a fair reading of *Robinson I* makes clear that we remanded the case for further proceedings under a single theory of liability: failure-to-train. *See Robinson I*, 722 F. App'x at 196 ("Because Hope adequately pleaded a § 1983 claim under a failure-to-train theory of liability, we will vacate and remand."). The District Court's jury instruction was consistent with this holding. Moreover, to the extent the passing mention of the term "supervise" in *Robinson I* was meaningful, the District Court offered to give a jury instruction that precisely mirrored our language in *Robinson I* and included the words "failure to train and supervise," but counsel for the Estate rejected this proposal, instead arguing that the instruction should say "failure to train *or*

supervise." App. 1454–55 (emphasis added). *Robinson I* provides no support for the use of those terms solely in the disjunctive. And even if the District Court had given the instruction the Estate proposed, there is no indication this would have had any effect on the accuracy of the jury instructions as a whole or on the outcome of the trial. Accordingly, we discern no error in the District Court's rejection of that instruction.

**2. Proposed jury instruction listing federal and state statutes**

The Estate also contends that the District Court erred in failing to read the jury a list of dozens of statutes and regulations that the Defendants allegedly violated. The Court's jury instruction on this issue did not misstate the applicable law and the Court's unwillingness to give the Estate's proposed instruction was not an abuse of discretion.

"[A] plaintiff must assert the violation of a federal right—not merely a violation of a federal law—to seek redress" under § 1983. *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009). Not all laws confer individual rights, and "[a] plaintiff bears the burden of establishing that a statute gives rise to federal rights enforceable through § 1983." *Id.*

The Estate did not meet this burden. In fact, it did not even attempt to argue why each of the listed statutes and regulations conferred individual rights, instead effectively asking the District Court to conclude on a blanket basis that they all did so. The Court did not err in declining this unreasonable request. And although some of the referenced statutes and regulations may confer rights enforceable through § 1983, listing dozens of those statutes and regulations without context likely would have confused the jury needlessly. Accordingly, we affirm the District Court's ruling on this issue.

### C. Expert testimony

Finally, the Estate argues that the District Court erred in limiting the testimony of its expert witness, Dr. David Mayer, and in admitting allegedly prejudicial and irrelevant evidence about a lawsuit against Dr. Mayer's former employer. We reject this argument.

We review the District Court's decisions on the admissibility of evidence, including expert testimony, for abuse of discretion. *See UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 831 (3d Cir. 2020); *United States v. Serafini*, 233 F.3d 758, 768 n.14 (3d Cir. 2000). No abuse is apparent here. The District Court appropriately permitted Dr. Mayer to testify on the standard of care Hope personally received, but not on nursing home training standards or whether Fair Acres' treatment constituted abuse or neglect, because Dr. Mayer was not qualified in those areas.

Nor did the District Court err in allowing defense counsel to show at trial the portion of Dr. Mayer's video deposition discussing a lawsuit against his former employer brought by the New York Attorney General. The Court correctly found that this issue was not properly preserved because the Estate did not timely object to the Defendants' selection of this portion of Dr. Mayer's video deposition for presentation at trial. Moreover, the inclusion of this portion of the video was not prejudicial; during the brief discussion of this issue, Dr. Mayer made clear that he was "just a[n] [occasional] per diem worker [at the entity being sued]," and he "left way before they got into trouble with the attorney general." App. 723. Accordingly, the District Court's rulings as to Dr. Mayer provide no basis for reversal.

*     *     *     *     *

We thus affirm the District Court's judgment.