**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2078
_____

COFUND II LLC

v.

HITACHI CAPITAL AMERICA CORP.,
Appellant
_____

On Appeal from the United States District
for the District of New Jersey
(D.C. Civ. No. 2-16-cv-01790)
District Judge:  Honorable Susan D. Wigenton
_____

Argued: March 23, 2022
_____

Before:  BIBAS, MATEY, and PHIPPS, *Circuit Judges*.

(Filed: April 13, 2022)

_____

Nicholas M. Insua    [**ARGUED**]
REED SMITH
599 Lexington Avenue
22nd Floor
New York, NY 10022

John P. Lacey, Jr.
ANDERSON KILL
One Gateway Center
Suite 1510
Newark, NJ 07102

*Counsel for Appellant*

Richard L. Zucker    [**ARGUED**]
LASSER HOCHMAN
75 Eisenhower Parkway
Suite 120
Roseland, NJ 07068
        *Counsel for Appellee*

_____

OPINION[*]
_____

PHIPPS, *Circuit Judge*.

This dispute between two businesses concerns their claims to a revenue stream established by a third party. Proceeds from the revenue stream were deposited in a blocked account controlled by one of the businesses. That business promised to hold the other business's share of the revenue stream in trust in the blocked account and to turn it over to the other business. But after bankruptcy proceedings commenced against the third party, the blocked-account holder did not remit any of those funds to the other business, who sued it for breach of contract to recover a share of the deposited revenue stream. After a virtual bench trial, the District Court found liability and awarded over $1.5 million in damages. In reviewing the District Court's factual findings for clear error, its evidentiary rulings for an abuse of discretion, and its legal conclusions *de novo*, we will affirm the judgment.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

## FACTUAL BACKGROUND
### (AS FOUND BY THE DISTRICT COURT
### AFTER A BENCH TRIAL)

Before it was forced into bankruptcy, Forest Capital LLC provided financing to small businesses. It did so through 'factoring' arrangements whereby it purchased a client's unpaid accounts receivable at a discount, and in return, it received a right to collect the full amount owed on those accounts. But factoring requires capital to pay for the accounts receivable, and Forest itself sought more capital to meet its clients' financing needs.

To obtain that capital, Forest entered an agreement with CoFund II LLC. Through a Master Participation Agreement, which was governed by Maryland law, CoFund and Forest agreed to the terms under which CoFund would purchase participation interests in Forest's factoring arrangements. In exchange for CoFund's up-front investment in those agreements, CoFund received entitlements to pro rata shares in the proceeds of Forest's factoring agreements. CoFund's participation interests matched Forest's factoring agreements in duration, and CoFund assumed the risk that Forest's borrowers might default on their obligations.

With the Master Participation Agreement in place, Forest and CoFund entered 24 separate participation agreements for factoring arrangements that Forest had entered. Through those agreements, CoFund provided capital for 24 of Forest's factoring arrangements.

Beyond CoFund's investments, Forest sought additional financing for its factoring business. It received loans from several entities, including Hitachi Capital America

3

Corporation. Under the Loan and Security Agreement that Forest and Hitachi entered, Hitachi provided Forest a line of credit and received a security interest in Forest's factoring proceeds as collateral. After drawing down that line of credit, Forest directed its clients to make their factoring repayments directly into a blocked account that Hitachi had set up for that purpose. Hitachi had "sole dominion and control" of the blocked account, and Forest could not withdraw any funds from the blocked account to pay CoFund or anyone else. Loan and Security Agreement ¶ 8.11(a) (App. 193); Blocked Account Agreement ¶ 4(b) (App. 211).

To account for the circumstance that they were both paid from Forest's factored funds, CoFund and Hitachi entered an Intercreditor Agreement, which was governed by Michigan law. That Agreement established CoFund's right of first recovery for CoFund Priority Collateral, which was defined to include the amount of CoFund's pro rata participation interests in Forest's factoring agreements. The Agreement also provided that if Hitachi were to obtain CoFund Priority Collateral, then Hitachi would "hold it in trust" for CoFund and "immediately turn it over to" CoFund. Intercreditor Agreement § 4D (App. 141). Once received, CoFund would apply that payment toward amounts that Forest owed it under the Master Participation Agreement. But when Hitachi's blocked account received factoring repayments – some of which constituted CoFund Priority Collateral – Hitachi applied those payments to pay down its extension of credit to Forest, and it did not send any funds to CoFund.

Even with these sources of financing, Forest became financially distressed, and afterwards, everything started to break down. Forest defaulted under the Master

4

Participation Agreement and owed CoFund its pro rata share of the factoring proceeds. The amount owed was substantial – $5.53 million – and after CoFund gave formal notice of that default to Forest and other interested parties, they took responsive actions. Forest's junior creditors initiated involuntary Chapter 7 bankruptcy proceedings against Forest. Four days later, Hitachi used funds in the blocked account to pay off the rest of the amount Forest owed it. Some funds were leftover, and without paying anything to CoFund, Hitachi released those remaining funds to Forest.

CoFund believed that under the Intercreditor Agreement, some of the funds in Hitachi's blocked account constituted CoFund Priority Collateral. Because Hitachi emptied the blocked account without paying any of that money to CoFund, CoFund sued Hitachi three days later for breach of contract, as well as for other claims not relevant here.

### JURISDICTIONAL ANALYSIS AND PROCEDURAL HISTORY

CoFund's suit was within the District Court's jurisdiction under the diversity statute. *See* 28 U.S.C. § 1332. The parties are completely diverse,[1] and the amount in controversy exceeds $75,000.[2]

---

[1] As a corporation Hitachi is a citizen of Delaware, where it is incorporated, and Connecticut, where it has its principal place of business. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). As an LLC, CoFund takes on the citizenship of its member and submembers, which are citizens of New Jersey, New York, and Nevada. *See id.* at 418.

[2] CoFund's Complaint alleged an amount in controversy exceeding $75,000, and it is not "a legal certainty that the claim is really for less than the jurisdictional amount," especially when CoFund received a judgment in its favor for over one-and-a-half million dollars. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938).

5

CoFund's breach-of-contract claim went to a virtual bench trial in November 2020. At trial, the District Court allowed one of CoFund's managing members, Daniel Cohen, to testify as both a fact and an expert witness. The expert testimony that Cohen provided as a Certified Public Accountant related to the calculation of CoFund's damages based on the amount of CoFund Priority Collateral that was deposited into the blocked account. In its post-trial findings of fact and conclusions of law, the District Court determined that Hitachi breached the Intercreditor Agreement and was liable for $1,553,613 in damages.

Within 30 days of that judgment, Hitachi filed a notice of appeal, bringing this dispute within this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1)(A) (2016).[3]

## DISCUSSION

Hitachi challenges the District Court's judgment on six grounds. None of those have merit.

---

[3] CoFund argues that the notice of appeal does not allow Hitachi to dispute several of the District Court's prior orders, only its final judgment. But at the time of Hitachi's appeal, appellate jurisdiction extended to the judgment specified in the notice of appeal and any judgment "fairly inferred" from the notice of appeal. Fed. R. App. P. 3(c)(1)(B) (2021); *see also Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 184 (3d Cir. 2010). By stating that it was appealing the District Court's final judgment "and all other rules and orders adverse to Hitachi," Not. of App. (App. 001), Hitachi's notice of appeal easily clears that that threshold, which has been subsequently amended so that "an appeal from a final judgment permits review of all rulings that led up to the judgment." Fed. R. App. P. 3(c)(1)(B) advisory committee's notes to 2021 amendment.

6

### 1. *Scope of the Bankruptcy Court's Jurisdiction*

Hitachi argues that CoFund's breach-of-contract claim should not have been in District Court but rather before the bankruptcy court as part of Forest's bankruptcy proceeding. It may be that the dispute could have been addressed by the bankruptcy court. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225–26 (3d Cir. 2004) (explaining that bankruptcy courts have jurisdiction to hear (but not decide) proceedings "related to" a bankruptcy case, which include "suits between third parties that conceivably may have an effect on the bankruptcy estate"). But unless the claim falls within the bankruptcy court's exclusive jurisdiction, the District Court still retained jurisdiction to adjudicate it. *See* 28 U.S.C. § 1334(e) (providing "exclusive jurisdiction" to bankruptcy courts over "all the property, wherever located, of the debtor as of the commencement of such case"); 11 U.S.C. § 541(a) (defining 'property of the debtor'); Here, however, Hitachi does not identify a basis for the bankruptcy court's exclusive jurisdiction. Nor is one readily apparent. Accordingly, this dispute was properly within the District Court's jurisdiction.[4]

### 2. *The 'No Recourse' Argument*

Hitachi further contends that a 'No Recourse' clause in the Intercreditor Agreement bars CoFund from seeking relief against Hitachi. This argument goes

---

[4] Hitachi also obliquely references the first-filed rule, but Hitachi does not present a coherent argument for how the junior creditors' involuntary bankruptcy petition acts as a first filing applicable to this dispute between CoFund and Hitachi, who were not parties to the bankruptcy proceeding when this suit was filed.

nowhere.  The 'No Recourse' clause states that "CoFund shall have no recourse against Hitachi as a result of [Forest's] failure to make any payment due to either Hitachi or CoFund."  Intercreditor Agreement ¶ 4D (App. 141).  But that clause does not apply here because CoFund is not suing Hitachi to recover an amount that Forest owed it.  Instead, CoFund sues Hitachi for withholding CoFund's share of the proceeds of factoring transactions that ended up in Hitachi's blocked account.  Thus, the 'No Recourse' provision does not preclude CoFund's claim.

### 3. *Breach of the Intercreditor Agreement*

Hitachi also disputes that it breached the Intercreditor Agreement.  The District Court's conclusion that Hitachi breached that agreement is well-grounded in the record.  Forest's clients sent money to Hitachi, and some of those funds constituted CoFund Priority Collateral and therefore belonged to CoFund.  But Hitachi did not transfer those funds to CoFund; instead, Hitachi applied those funds to reduce to the amount of money that Forest owed it, and then it remitted the rest to Forest.  Yet, the Intercreditor Agreement does not permit Hitachi to pay only itself and Forest.  Rather, that Agreement obligated Hitachi to "hold all funds representing CoFund Priority Collateral in trust for CoFund" and to "immediately turn [them] over" to CoFund.   Intercreditor Agreement ¶ 4D (App. 140–41).  The District Court correctly recognized that Hitachi's conduct breached the Intercreditor Agreement.

### 4. *The Impossibility or Impracticability Defense*

Unfatigued, Hitachi also asserts another defense to its liability under the Intercreditor Agreement.  Hitachi argues that it was impossible or impracticable to pay

8

CoFund its share of the proceeds from the blocked account because neither CoFund nor Forest provided it with any credible information about the amounts of CoFund Priority Collateral in the blocked account. But Michigan law, which governs the Intercreditor Agreement, does not excuse Hitachi's conduct so easily, especially here, where Hitachi knew or should have known that some money coming into the blocked account would constitute CoFund Priority Collateral. *See Vergote v. K Mart Corp.*, 404 N.W.2d 711, 717–18 (Mich. Ct. App. 1987) (explaining that impossibility or impracticability of performance must be caused by "an unanticipated circumstance"); *see also Roberts v. Farmers Ins. Exch.*, 737 N.W.2d 332, 342 (Mich. Ct. App. 2007) (explaining that the success of an impossibility defense depends on "whether the supervening event producing impossibility was or was not reasonably foreseeable when [the promisor] entered into the contract" (quoting *id.* at 717)). Rather, as the District Court correctly explained, even if Hitachi were uncertain about the amount of CoFund Priority Collateral or feared potential claims by junior creditors, "the appropriate action would have been to hold the funds (and, if necessary, to interplead them), instead of disregarding its obligations as a trustee under the Intercreditor Agreement and paying the moneys to itself." *CoFund II LLC v. Hitachi Cap. Am. Corp.*, 2021 WL 689119, at *5 (D.N.J. Feb. 22, 2021). Thus, neither an impossibility nor an impracticability defense has any traction here.

### 5. *The Challenge to the Expert's Qualifications*

Hitachi next challenges the qualifications of CoFund's expert witness. That witness, Daniel Cohen, is a Certified Public Accountant who testified about the portion of

9

funds in the blocked account that constituted CoFund Priority Collateral. But Hitachi argues that Cohen is not qualified to testify as an expert because he had not previously been qualified or testified as an expert; he had not authored a peer-reviewed publication or a book chapter; and he is not a Certified Forensic Accountant.

Hitachi's efforts fail for two reasons. First, Hitachi did not preserve this challenge to Cohen's qualifications. Instead, it waived that right, opting instead to attack Cohen's credibility on cross-examination. Second, a witness's expertise may be based on "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, and those requirements are not rigorous. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (recognizing that "a broad range of knowledge, skills, and training qualify an expert"). Nor do an expert's qualifications hinge on any of the bright-line distinctions that Hitachi offers. *See, e.g.*, *Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 652–53 (3d Cir. 1982); *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87–88 (3d Cir. 1979). And even taken together, those concerns do not overcome the District Court's exercise of discretion[5] to permit expert testimony from a professionally licensed witness about topics within his field of expertise.

### 6.  *The Calculation of CoFund's Damages*

Lastly, Hitachi disputes the District Court's calculation of $1,553,613 in damages. Hitachi characterizes CoFund's theory of damages as convoluted and then argues that the

---

[5] *See UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 831 (3d Cir. 2020) (stating that "the admissibility of expert testimony" is reviewed "for an abuse of discretion").

District Court did not account for CoFund's entitlement to only a pro rata share of the factoring proceeds or for set-offs from Forest's bankruptcy. But Hitachi must demonstrate a clear error in the District Court's calculation such that it is "completely devoid of minimum evidentiary support" or without any "rational relationship to the supportive evidentiary data." *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 283 (3d Cir. 2014) (quoting *Berg Chilling Sys., Inc. v. Hull Corp.*, 369 F.3d 745, 754 (3d Cir. 2004)). Hitachi's conclusory contentions fall well short of that standard.

\* \* \*

For these reasons, after reviewing the District Court's findings of fact for clear error, its admission of testimony for an abuse of discretion, and its legal conclusions *de novo*, we will affirm the judgment of the District Court.